D. GILL SPERLEIN, SBN 172887
THE LAW OFFICE OF D. GILL SPERLEIN
345 Grove Street
San Francisco, CA 94114
Telephone: (415) 404-6615
Facsimile: (415) 404-6616
gill@sperleinlaw.com

Attorneys for
Plaintiff Blacc Spot Media, Inc.

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **BLACC SPOT MEDIA, INC.** | Case № 3:16-cv-663 |
| **Plaintiff,** | **COMPLAINT FOR BREACH OF WRITTEN CONTRACT and DECLARATORY RELIEF 28 U.S.C §2201** |
| v. | |
| **TELMATE, INC.** | |
| **Defendant.** | |

## INTRODUCTION

1.  This is an action to recover damages caused by Defendant Telmate, Inc.'s (hereinafter "Defendant" or "Telmate") breach of a software Development Agreement with Blacc Spot Media, Inc. (hereinafter "Plaintiff" or "BSM"). In spite of Blacc Spot's fulfilling its obligations under the contract, Telmate falsely accused Blacc Spot Media of breach. Disregarding clear

-1-

contractual obligations to negotiate any revisions to the timing or scope of the project in good faith, and a further obligation to allow Blacc Rock Media to cure any perceived deficiencies, Telmate summarily terminated the contract without just cause.  When Telmate subsequently engaged Blacc Spot's subcontractor, Frozen Mountain, Inc. to complete the software development project, it became clear that the sole reason Telmate fabricated a breach, was in order to avoid its contractual obligations with Blacc Spot so that it could enjoy cost savings by engaging the subcontractor directly.

## PARTIES

2.   Plaintiff BSM is a Georgia corporation with its principal place of business located at 75 5th Street Suite 314, Atlanta, GA 30308.  BSM provides web and mobile development services to its clients, with a focus on web real-time communications.

3.   Defendant Telmate is a California corporation with its principal place of business located at 655 Montgomery Street, 18th Floor San Francisco, CA 94111.  Telmate is a technology company specializing in the design, development and support of communications products for the corrections industry.

## JURISDICTION AND VENUE

4. Jurisdiction of this matter is proper pursuant to 28 U.S.C. § 1332 as the Plaintiffs and Defendants to this action are citizens of different states and the amount in controversy, exclusive of interest and costs, is in excess of $75,000.

5. Venue in this district and division is proper under 28 U.S.C § 1391, as Defendant Telmate is located in the Northern District of California, San Francisco Division.

## INTRADISTRICT ASSIGNMENT

6. This action arises in San Francisco County and is not an Intellectual Property Action, Securities Class Action, Capital or Noncapital Prisoner Petitions, or Prisoner Civil Rights Actions and thus is properly assigned to this division.

## FACTUAL BACKGROUND

7. In August 2014, Matthew Mansfield, a director of visual design with Telmate contacted Lantre Barr, the Chief Executive Officer of BSM by email seeking to retain BSM to assist with the development of a web real time communication (hereinafter referred to as "Web RTC") application.

8. Shortly thereafter, the parties conferred to further discuss the services sought by Telmate and to execute the necessary agreements to facilitate the commencement of the project.

9. Thereafter, pursuant to Telmate's request, BSM forwarded a proposal to Telmate, which included the quote and estimated costs associated with the project.

10. In September 2014, after Telmate received BSM's proposal, it informed that Telmate was considering two other companies, but required a technical review of the services that would be provided to Telmate before a final determination could be made.

11. BSM decided that it would use software developed by Frozen Mountain, Inc. (hereinafter referred to as "Frozen Mountain") on the Telmate project. The use of that software was contemplated in the Developer Agreement and specifically set forth in Appendix C attached thereto.

12. Lantre Barr (hereinafter referred to as "Barr") invited Ted Venema, the Vice President of Business Development for Frozen Mountain to the technical review conference with Telmate. After reviewing the software, Telmate granted BSM the contract.

13. Barr hired two subcontractors, Frozen Mountain and Hummingbird Technologies, Inc. (hereinafter referred to as "Hummingbird") to assist with the

-4-

Telmate project. Both subcontractors represented that they had the required number of personnel and skill set to handle the project. Telmate knew BSM would employ subcontractors to perform portions of the work to be performed under the Agreement and nothing in the Agreement prevented BSM from doing so.

14. On October 24, 2014, Scott Lam, General Counsel for Telmate and Barr executed a contract in the amount of $327,798 for the Web RTC services that were to be performed.

15. On October 28, 2014, Drewry Morris, the Chief Technology Officer of Hummingbird and Barr met with approximately twenty (20) representatives from Telmate at their office in San Francisco, California to further discuss the requirements of the contract. The Telmate representatives understood that Morris worked for HummingBird and that Humminbird would work as a subcontractor on the Development Project.

16. On November 10, 2015, BSM began working on the first milestone for the project with Telmate. After beginning the project, a number of unforeseeable technical problems began to surface. BSM and Telmate agreed that the first milestone of December 22, 2014 could not be met due to the technical problems. On January 9, 2015, BSM delivered the first milestone. The Development Agreement specifically anticipated that there might be

unforeseen delays and required the parties to "negotiate in good faith" to determine if such setback would change the subsequent milestone delivery dates.

17. On January 12, 2015, Mr. Lam approved the milestone delivery and BSM received its payment of $91,740 for completing the first milestone. Immediately thereafter, BSM began work on the second milestone. Later without just cause, Telmate reneged on the approval and demanded repayment of the $91,740 on the first milestone.

18. In late January 2015, Telmate informed BSM that they were concerned about the current and future deliverables, as there was a misunderstanding between the parties regarding the scope of the services to be provided. Around the same time, Telmate expressed additional concerns about the work product provided by Hummingbird. As a result, BSM agreed to have team working sessions at least once a week to address Telmate's concerns.

19. During the sessions, it became apparent that the product provided by Hummingbird did not meet industry standards.

20. On February 23, 2015, after having a conversation with Telmate representatives, Barr decided to remove Hummingbird from the project and transition their responsibilities to Frozen Mountain.

-6-

COMPLAINT
CASE № 3:16-CV-663

21. After Frozen Mountain was fully transitioned, Jerod Venema, Chief Operations Officer of Frozen Mountain, visited Telmate's offices in San Francisco to address any additional concerns Telmate might have with the project.

22. BSM and Frozen Mountain began to work together to address issues that arose from Hummingbird's work product.

23. At the end of March 2015, Barr spoke with Jerod Venema who informed that the project was concluding. Barr reached out to Telmate to discuss the conclusion of the project and to see if Telmate had any additional concerns that needed to be addressed.

24. Over the next six weeks, Telmate requested that several items be completed before the project could be closed out. Many of the services requested were not within the scope of the original Development Agreement. Moreover, Telmate did not follow the formal change order procedures set forth in the Agreement. Nonetheless, BSM completed the tasks in a good faith effort to satisfy the client.

25. At the end of May 2015, after BSM had fulfilled all of its obligations under the original Agreement, Telmate failed to pay the balance of $122,590 owed. Instead, Telmate sent a letter stating that it was terminating its

contract with BSM and demanded the return of a $91,740 payment Telmate had previously sent to BSM.

## FIRST CAUSE OF ACTION
Breach of Contract

26. Plaintiff hereby incorporates all proceeding paragraphs as if fully restated herein.

27. Plaintiff and Defendant executed a contract on October 24, 2014 wherein Plaintiff agreed to provide Web RTC services to Defendant in exchange for payment of $327,798.

28. Plaintiff completed the services in March 2015.

29. To date, Plaintiff has received a total of $205,208 of the $327,798 contract fee.

30. Defendant breached said agreement by failing and refusing to furnish payment after the completion of the project in accordance with the Agreement.

31. As a direct and proximate result of Defendant's actions, as described above, Plaintiff has suffered damages and is entitled to compensatory damages, costs, expenses and attorney' fees from Defendant.

## SECOND CAUSE OF ACTION
Declaratory Relief - 28 U.S.C. §2201

32. Plaintiff repeats and incorporates by this reference each and every allegation set forth in the previous paragraphs as if set forth fully herein.

33. In a case of actual controversy within its jurisdiction and upon the filing of an appropriate pleading, 28 U.S.C. §2201 empowers this Court to declare the rights and other legal relations of any interested party seeking such declaration.

34. This Court has jurisdiction over these parties and over this controversy.

35. Through a letter from its counsel, Defendant Telmante has demanded the return of the first milestone payment of $91,740 and threatened that if payment was not received in full it may exercise any of its rights, remedies, powers or privileges under the Agreement or applicable by law.

36. Plaintiff did not breach the Development Agreement.  In fact, it fulfilled all of its obligations under the Agreement.

37. In addition to its claims for damages for Telmate's breach of the Agreement as set forth above, Plaintiff seeks a declaratory judgment that Plaintiff is entitled to keep the full amount of the first milestone payment.

## DEMAND FOR JURY TRIAL

38.     Plaintiff hereby demands a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully pray for:

1)     General damages based on Defendant's conduct as alleged herein in an amount to be determined at trial;

2)     Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts in an amount to be determined at trial;

3)     Prejudgment interest at the rate allowed by law;

4)     Reasonable attorney's fees and expenses of litigation;

5)     Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights; and

6)     All other relief to which Plaintiff may be entitled.

Respectfully Submitted,

Dated: *February 9, 2016*     by_____/s/ D. Gill Sperlein_____
D. Gill Sperlein
The Law Office of D. Gill Sperlein
Attorneys for Plaintiff Blacc Spot Media, Inc.